Christopher D. Thomas (#010482)
Matthew L Rojas (#025030)
Andrea J. Driggs (#023633)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone:    602.351.8000
Facsimile:    602.648.7000
cthomas@perkinscoie.com
mlrojas@perkinscoie.com
adriggs@perkinscoie.com
docketPHX@perkinscoie.com

*Attorneys for Defendant-Intervenor*
*Resolution Copper Mining, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Mining Reform Coalition; Inter Tribal Association of Arizona, Inc.; Earthworks; Center for Biological Diversity; Access Fund; and Grand Canyon Chapter of the Sierra Club,<br><br>Plaintiffs,<br><br>v.<br><br>United States Forest Service, an agency in the U.S. Department of Agriculture; Neil Bosworth, Supervisor of the Tonto National Forest; and Tom Torres, Acting Forest Supervisor, Tonto National Forest,<br><br>Defendants.<br><br>Resolution Copper Mining, LLC,<br><br>Defendant-Intervenor. | No. CV-21-00122-PHX-DLR<br><br>**RESOLUTION COPPER MINING, LLC'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION** |

1

## TABLE OF CONTENTS

2

**Page**

3
I.    INTRODUCTION ............................................................................................. 1

4
II.   BACKGROUND .............................................................................................. 2

III.  THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR A
5
      PRELIMINARY INJUNCTION ENJOINING THE LAND EXCHANGE ........... 3

6
      A.    Plaintiffs Are Unlikely to Prevail on The Merits ........................................ 4

7
            1.    The Exchange Act Does Not Establish a Private Right of
                  Action ......................................................................................... 5

8
            2.    The Exchange Act's Meaning is Plain .............................................. 5

9
            3.    Congress Has Plenary Power Over Federal Lands Under the
                  Property Clause; It Used this Power to Exempt the Appraisal
10
                  and Land Exchange from Various Requirements .............................. 5

11
            4.    The Act Mandates a Land Exchange; It Does Not Authorize
                  Resolution to Build a Mine ............................................................. 6

12
            5.    Plaintiffs Lacks Standing to Demand that a Court Enjoin the
                  Land Exchange ............................................................................... 6

13
            6.    Plaintiffs Will Not Suffer Irreparable Harm in the Absence of
14
                  An Injunction ................................................................................. 8

            7.    Enjoining Conveyance of Title Would Harm the Public
15
                  Interest, as Expressed by Congress. ................................................ 9

Conclusion ....................................................................................................... 10

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

5

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
548 U.S. 291 (2006) ............................................................. 5

6

7

*Caribbean Marine Services Co., Inc. v. Baldridge*,
844 F.2d 668 (9th Cir. 1988) ............................................... 8

8

*Center for Competitive Politics v. Harris*,
784 F.3d 1307 (9th Cir. 2015) ............................................. 3

9

10

*Coalition for Econ. Equity v. Wilson*,
122 F.3d 718 (9th Cir. 1997) ............................................... 9

11

12

*Colorado River Indian Tribes v. Town of Parker*,
776 F.2d 846 (9th Cir. 1985) ............................................... 9

13

14

*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008) ............................................................. 6

15

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) ............................................. 9

16

17

*Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*,
739 F.2d 466 (9th Cir. 1984) ............................................... 9

18

19

20

*Grand Canyon Tr. v. Williams*,
No. CV-13-08045-PCT-DGC, 2015 WL 3385456 (D. Ariz. May 26,
2015) .................................................................................... 7

21

*Havasupai Tribe v. Provencio*,
906 F.3d 1155 (9th Cir. 2018) ............................................. 7

22

23

*Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) ............................................. 8

24

25

*Hornish v. King Cty.*,
899 F.3d 680 (9th Cir. 2018) ............................................... 7

26

*Kleppe v. New Mexico*,
426 U.S. 529 (1976) ............................................................. 5

27

28

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ............................................................. 6

1

2

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

3

4

*Lopez v. Brewer,*
    680 F.3d 1068 (9th Cir. 2012) ....................................................................... 3

5

6

*McGreevey v. PHH Mortg. Corp.,*
    897 F.3d 1037 (9th Cir. 2018) ..................................................................... 5

7

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) ....................................................................................... 4

8

9

*N. Plains Res. Council v. Lujan,*
    874 F.2d 661 (9th Cir. 1989) ....................................................................... 7

10

11

*New Motor Vehicle Bd. v. Orrin W. Fox Co.,*
    434 U.S. 1345 (1977) (Rehnquist, J., in chambers) ...................................... 9

12

13

*Nken v. Holder,*
    556 U.S. 418 (2009) ....................................................................................... 9

14

*Nuclear Info. & Res. Serv.,*
    457 F.3d at 949............................................................................................ 6, 7

15

16

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
    810 F.3d 631 (9th Cir. 2015) ....................................................................... 4

17

18

*Segalman v. Sw. Airlines Co.,*
    895 F.3d 1219 (9th Cir. 2018) ..................................................................... 5

19

20

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009)....................................................................................... 7

21

*Town of Chester v. Laroe Estates, Inc.,*
    137 S.Ct. 1645 (2017) ............................................................................... 6, 8

22

23

*United States v. City & Cnty. of S.F.,*
    310 U.S. 16 (1940)......................................................................................... 6

24

25

*United States v. Oakland Cannabis Buyers' Co-op.,*
    532 U.S. 483 (2001)................................................................................... 2, 9

26

*United States v. Ogles,*
    440 F.3d 1095 (9th Cir. 2006) (en banc) ..................................................... 8

27

28

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ................................................................................. 3, 4, 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

5 U.S.C. § 551(1)(A) ..................................................................................................... 8

5 U.S.C. § 551(1)(B) ..................................................................................................... 8

16 U.S.C. § 539p .......................................................................................................... 1

16 U.S.C. § 539p (a) ................................................................................................. 2, 5

16 U.S.C. § 539p (c)(5)(A) ........................................................................................... 3

16 U.S.C. § 539p (c)(10) .......................................................................................... 2, 3

16 U.S.C. § 539p (e) ................................................................................................... 10

16 U.S.C. § 539p (e)(2) ................................................................................................ 3

**OTHER AUTHORITIES**

U.S. Const. art. IV, §3, cl. 2 ......................................................................................... 5

1    **I.    INTRODUCTION**

2        Plaintiffs' request that the Court enjoin transfer of title as required by an act of

3    Congress fails to meet its heavy burden of demonstrating irreparable harm, a strong

4    likelihood of success on the merits, and a balance of equities that tips sharply in Plaintiffs'

5    favor. Plaintiffs ground their claims on one statute that provides for no private right of

6    action and another than does not apply to Congress. Moreover, mere transfer of title will

7    not create immediate, irreparable harm to Oak Flat, as Judge Logan found in pending

8    litigation involving the same land exchange. Any impact to Oak Flat will not occur for

9    years after conveyance of title. That undisputed fact alone negates Plaintiffs' claims of

10   immediate, irreparable harm, even were the Court inclined to second-guess a result

11   mandated by statute.

12       This case arises out of a policy decision made by Congress in the Southeast

13   Arizona Land Exchange and Conservation Act, Section 3003 of Public Law 113-291,

14   enacted by Congress on December 19, 2014 and signed into law thereafter by President

15   Obama ("Exchange Act"). It is now codified at 16 U.S.C. § 539p. The Exchange Act's

16   explicit purpose—front and center on the first line of Section 3003—was to "authorize,

17   direct, facilitate, and expedite the exchange of land between Resolution Copper and the

18   United States." The terms detailed in the Exchange Act readily explain why Congress

19   made the policy choice it did. Resolution owns private lands within the Tonto National

20   Forest and also holds unpatented claims under the General Mining Law of 1872 beneath

21   lands whose surface is owned by the United States. Resolution also owns more than 5,000

22   acres of valuable conservation lands elsewhere in Arizona. At Resolution's option, the

23   Exchange Act calls for the exchange of 2,422 acres of public land for 5,460 acres of

24   Resolution's high-value conservation lands. The Act further calls for Resolution to make a

25   payment, if needed to equalize the exchange. And, in a term not required under the

26   General Mining Law, the Act calls for Resolution to make an additional, annual royalty

27   payment if its future mine produces more mineral than anticipated when the appraisal is

28   completed.

1    Congress has plenary power to regulate the disposition of public lands. "Courts of

2    equity cannot, in their discretion, reject the balance that Congress has struck in a statute."

3    *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001). Plaintiffs

4    contend that conveyance of title must be enjoined because of alleged flaws in the final

5    environmental impact statement ("FEIS"), prepared by the Forest Service under the

6    National Environmental Policy Act ("NEPA"). It is Plaintiffs' theory that is flawed:

7    Congress decided in statute six years ago that the exchange *must* occur; the Forest Service

8    has no discretion under the statute to alter the exchange, regardless of the results of the

9    FEIS (and regardless of any alleged flaws therein). Plaintiffs' dispute is with Congress,

10   whose statutes are not subject to NEPA challenges. Congress could have, but did not,

11   specify that no transfer of title could occur until after any judicial challenges to the FEIS

12   were resolved.

13   Moreover, mere transfer of title does not create a lawless frontier or render

14   inapplicable other federal and state laws governing development in wetlands, protection of

15   endangered species, or operation of mines. Plaintiffs claim immediate and irreparable

16   harm in the form of future subsidence at Oak Flat and restriction of access to it. As

17   explained further below, however, neither of those congressionally anticipated results will

18   occur for years, if at all. Plaintiffs bear the burden of proving that enjoining transfer of

19   title would produce a net benefit for the public. Because that balancing exercise was

20   performed by Congress in its promulgation of the statute, Plaintiffs cannot meet that

21   burden. Further, even if it were proper for the Court to independently weigh the equities,

22   as Plaintiffs urge, injunctive relief would not be warranted.

23   **II.    BACKGROUND**

24   The Exchange Act was passed to "authorize, direct, facilitate, and expedite the

25   exchange of land between Resolution Copper and the United States." 16 U.S.C. § 539p (a).

26   The Act mandates that "all right, title, and interest of the United States in and to the

27   Federal land" be transferred to Resolution Copper no "later than 60 days after the date of

28   publication of the final environmental impact statement[.]" 16 U.S.C. § 539p (c)(10). The

1    Act directs the Secretary of Agriculture to administer an exchange that would convey

2    2,422 acres of NFS land to Resolution in exchange for more than 5,000 acres of private

3    land on eight different parcels located in eastern Arizona. *Id.* Notably, the land exchange

4    provides for economic equalization in addition to a royalty payment. 16 U.S.C. § 539p

5    (c)(5)(A), (e)(2).

6         The parcel to be conveyed to Resolution includes the Oak Flat Withdrawal Area

7    and the national forest lands above the copper deposit. These 2,422 acres are known as the

8    Oak Flat Federal Parcel. In turn, Resolution is exchanging eight parcels of private land

9    with the Federal Government, as follows: the Apache Leap South End Parcel; the Tangle

10   Creek Parcel; the Turkey Creek Parcel; the Cave Creek Parcel; the East Clear Creek

11   Parcel; the Lower San Pedro River Parcel; the Appleton Ranch Parcel; the Dripping

12   Springs Parcel; and, if requested by the Town of Superior, 30 acres associated with the

13   Fairview Cemetery, 250 acres associated with parcels contiguous to the Superior Airport,

14   and 265 acres of Federal reversionary interest associated with the Superior Airport.

15

16   **III.    THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR A
          PRELIMINARY INJUNCTION ENJOINING THE LAND EXCHANGE**

17        "A preliminary injunction is 'an extraordinary and drastic remedy, one that should

18   not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"

19   *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation omitted); *see also Winter v.*

20   *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary

21   injunction is an extraordinary remedy never awarded as of right"). A party seeking a

22   preliminary injunction "must establish that he is likely to succeed on the merits, that he is

23   likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

24   equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S.

25   at 20The moving party "bears the heavy burden of making a 'clear showing' that it [is]

26   entitled to a preliminary injunction." *Center for Competitive Politics v. Harris*, 784 F.3d

27   1307, 1312 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 22).

28        When considering injunctive relief, "it is not enough for a court . . . to ask whether

there is a good reason why an injunction should not issue; rather, a court must determine that an injunction should issue under the traditional four-factor test set out above." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 158 (2010); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) ("An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course.").

Further, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). Here, as in *Monsanto*, plaintiffs allegedly aggrieved by "hypothetical future [permitting] decision[s] will have ample opportunity to challenge [them], and to seek appropriate preliminary relief, if and when such [] decision[s are] made." *Id.* at 164. When a "less drastic remedy" than enjoining the congressionally mandated land exchange would be "sufficient to redress respondents' injury, no recourse to . . . additional and extraordinary relief" is warranted. *Id.* at 165-66.

As Judge Logan concluded in his order in the closely related Apache Stronghold litigation:

> In 1971, President Nixon authorized Oak Flat to be mined if it were first conveyed to a private entity, and in 2014, Congress authorized that conveyance. (Doc. 7 at ¶ 21). This Court's hands are tied both by Congress and by the Constitution. *Skoko v. Andrus*, 638 F.2d 1154, 1158 (9th Cir. 1979) ("The courts cannot interfere with the administration of public property as arranged by the Congress and the Executive, so long as constitutional boundaries are not transgressed by either branch.").

Order dated February 12, 2012, Doc. 57 in *Apache Stronghold v. United States*, No. 2:21-cv-00050-SPL, Ex. A., p. 11.

## A.    Plaintiffs Are Unlikely to Prevail on The Merits

There is a fatal disconnect between the relief sought by Plaintiffs—an injunction against conveyance of title—and the theories asserted in their suit. There is no private

1   right of action under the Exchange Act. And while NEPA requires administrative agencies

2   to refrain from arbitrary and capricious conduct, it does not apply to acts of Congress. In

3   order to demonstrate that the Court should enjoin a transfer of title compelled by statute,

4   Plaintiffs must prove that the statute itself is unconstitutional. That, they have not even

5   argued.

6           **1.     The Exchange Act Does Not Establish a Private Right of Action.**

7           To the extent Plaintiffs seek relief under the Exchange Act itself, their claims are

8   flawed as a matter of law. The Exchange Act creates no private right of action, and there

9   is no evidence that Congress intended to create one and failed. "[W]ithout Congress's

10  intent to create a remedy, no right of action can be implied." *McGreevey v. PHH Mortg.*

11  *Corp.*, 897 F.3d 1037, 1043–44 (9th Cir. 2018); *Segalman v. Sw. Airlines Co.*, 895 F.3d

12  1219, 1224 (9th Cir. 2018).

13          **2.     The Exchange Act's Meaning is Plain.**

14          The Supreme Court has "stated time and again that courts must presume that a

15  legislature says in a statute what it means and means in a statute what it says there."

16  *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (citation

17  omitted). "When the statutory language is plain, the sole function of the courts—at least

18  where the disposition required by the text is not absurd—is to enforce it according to its

19  terms." *Id.* (citation and internal quotation marks omitted).

20          The Act clearly states that its purpose is to authorize, direct, facilitate, and expedite

21  the exchange of land between Resolution Copper and the United States. 16 U.S.C. § 539p

22  (a). There is simply no ambiguity in Congress's directions.

23          **3.     Congress Has Plenary Power Over Federal Lands Under the**
            **Property Clause; It Used this Power to Exempt the Appraisal**
24          **and Land Exchange from Various Requirements.**

25          Pursuant to the Property Clause, Congress has the power to "dispose of and make

26  all needful rules and regulations respecting the territory or other property belonging to the

27  United States[.]" U.S. Const. art. IV, §3, cl. 2. The Property Clause of the Constitution

28  gives Congress "complete power" over federal lands; it is "without limitations." *Kleppe v.*

*New Mexico*, 426 U.S. 529, 539-40 (1976) ("Congress exercises the powers both of a proprietor and of a legislature over the public domain."). "[I]t is not for the courts to say how that trust shall be administered. That [is] for Congress to determine." *United States v. City & Cnty. of S.F.*, 310 U.S. 16, 29-30 (1940) (internal quotation marks and citation omitted).

### 4.      The Act Mandates a Land Exchange; It Does Not Authorize Resolution to Build a Mine.

The Act mandates a land exchange. That land exchange will not produce the irreparable harm alleged by Plaintiffs. While the land exchange is one part of the that process, a "myriad" of permitting and other decisions remain, and none of those are certain to occur.[1] *See id.* Mining is subject to regulation under a variety of federal, state, and local statutes and permits, and Resolution will be required to comply with those.

### 5.      Plaintiffs Lacks Standing to Demand that a Court Enjoin the Land Exchange

"[A] plaintiff must demonstrate standing for *each claim* he seeks to press and for *each form of relief* that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1647 (2017) (emphasis added) (citation omitted). To have standing, a plaintiff "must 'present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008).[2]

Whether a plaintiff comes within "the 'zone of interests' [of a statute (i.e., whether a plaintiff has standing under an act)] is an issue that requires" a court to determine, "using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control*

---

[1] *See* Table 1.5.6 of the FEIS (listing the various permits, licenses, and authorizations required for the project).
[2] In order to establish an injury in fact in the context of a claimed procedural error in an agency's decision-making process, a plaintiff must show that "(1) the [agency] violated certain procedural rules; (2) these rules protect [a plaintiff's] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Nuclear Info. & Res. Serv.*, 457 F.3d at 949.

1  *Components, Inc*., 572 U.S. 118, 127 (2014).

2      While Plaintiffs argue that they have standing based on the intended use of the

3  property subject to the exchange, these purported interests do not support enjoining

4  transfer of title. As to that form of relief, Plaintiffs are outside the "zone of interests"

5  contemplated by the Act. *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1166 (9th Cir.

6  2018) ("We agree with the district court that the Trust's fourth claim falls outside the

7  Mining Act's zone of interests[;]" FLPMA was the legal basis of the claim); *Hornish v.*

8  *King Cty*., 899 F.3d 680, 692 (9th Cir. 2018) (a party that possesses "no property interests'

9  in disputed land "cannot allege any injury to such interests, and therefore lack[s] standing"

10  in a quiet title action); *N. Plains Res. Council v. Lujan*, 874 F.2d 661, 667 (9th Cir. 1989)

11  ("Appellants do not have either a cause of action or standing to challenge Interior's grant

12  of a land patent because appellants do not and cannot assert any legal property interest in

13  the land at issue."); *Grand Canyon Tr. v. Williams*, No. CV-13-08045-PCT-DGC, 2015

14  WL 3385456, at *3 (D. Ariz. May 26, 2015) ("Plaintiffs could not assert this claim

15  because their interests did not fall within the 'zone of interests' Congress sought to protect

16  in the Mining Law of 1872." The Mining Act's obvious intent was "to reward and

17  encourage the discovery of minerals that are valuable in an economic sense[,]" and the

18  plaintiff's interests were environmental and historical, but not economic).

19      Here, the law at issue governs the land exchange between Resolution Copper and

20  the United States; they are the only two parties within the zone of interests contemplated

21  by the Act. *See Nuclear Info.,* 457 F.3d at 950 (question is "whether a particular plaintiff

22  has been granted a right to sue by the statute under which he or she brings suit").

23      "[D]eprivation of a procedural right without some concrete interest that is affected

24  by the deprivation—a procedural right in vacuo—is insufficient to create Article III

25  standing." *Summers v. Earth Island Inst*., 555 U.S. 488, 496 (2009). Even assuming for

26  the sake of argument that Plaintiffs had standing to assert that the FEIS was procedurally

27

28

deficient, Plaintiffs do not have standing to demand that the land exchange be enjoined.[3] "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Town of Chester, N.Y.*, 137 S. Ct. at 1650. Plaintiffs are attempting to use the court system to circumvent the clear will of Congress; Plaintiffs' "remedy lies with Congress, not with the courts." *United States v. Ogles*, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc).

### 6.    Plaintiffs Will Not Suffer Irreparable Harm in the Absence of An Injunction.

Plaintiffs cannot demonstrate that irreparable harm is "likely" if the conveyance of title is not enjoined. *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). *See also Caribbean Marine Services Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). When "[m]ultiple contingencies must occur before" plaintiff's claimed injuries can "ripen into concrete harms," a plaintiff has not demonstrated irreparable harm. *Caribbean Marine*, 844 F.2d at 675.

That is exactly the situation here. Even following conveyance of title, any mining operations—an 49d related impacts to Oak Flat—are years away. Before beginning mine construction, Resolution must conduct additional analysis of the ore body and the underground geology. Declaration of Andrew Lye, Exhibit B, ¶¶ 8-9. Resolution then will need to construct underground infrastructure, also years away. *Id.* at ¶¶ 10-11. Conveyance of title will no result in any immediate subsidence at Oak Flat. *Id.* Indeed, any subsidence at Oak Flat is at least a decade away. Declaration of Victoria Peacey, Exhibit C, ¶ 49. In the meantime, Resolution would provide access to Oak Flat and manage it consistent with the status quo. Id. at ¶¶ 33-48. In particular, Resolution will continue to allow Emory oak harvesting, ¶ 37; rock climbing and bouldering, ¶ 43; off-

---

[3] The APA broadly defines agency as "each authority of the Government of the United states" but specifically exempts certain entities including "Congress" and the "courts of the United States[.]" 5 U.S.C. § 551(1)(A), (B).

1    road recreation, ¶ 44; and access to Oak Flat Campground, ¶ 46.

2            To the extent Plaintiffs claim possible economic injury from the land exchange,

3    that generally can be remedied by damages and does not support a finding of irreparable

4    harm. *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 851 (9th Cir. 1985)

5    ("purely monetary injury is compensable, and thus not irreparable"); *Goldie's Bookstore,*

6    *Inc. v. Superior Court of State of Cal*., 739 F.2d 466, 471 (9th Cir. 1984) ("Mere financial

7    injury, however, will not constitute irreparable harm if adequate compensatory relief will

8    be available in the course of litigation.").

9            Only the harms of the land exchange mandated by the Act that are at issue here,

10   and enjoining exchange of title cannot be supported based on potential future injuries

11   resulting from the mine itself.

12

13                    **7.    Enjoining Conveyance of Title Would Harm the Public Interest,**
                            **as Expressed by Congress.**[4]

14           In addition to Plaintiffs having no ability to demonstrate immediate, irreparable

15   harm, granting them the relief the seek would affirmatively harm the public interest. "[A]

16   court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in

17   legislation." *United States v. Oakland Cannabis Buyers' Coop*., 532 U.S. 483, 497 (2001)

18   (citation omitted). Further, "[i]n exercising their sound discretion, courts of equity should

19   pay particular regard for the public consequences in employing the extraordinary remedy

20   of injunction." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)

21   (citation omitted); *Winter*, 555 U.S. at 24. The burden on a plaintiff challenging the

22   operation of a statute is particularly heavy because "it is clear that a state suffers

23   irreparable injury whenever an enactment of its people or their representatives is enjoined."

24   *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see New Motor*

25   *Vehicle Bd. v. Orrin W. Fox Co*., 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)

26

27   _____
            [4] When the government is a party, the court considers the balance of hardships and
28   the public interest factors together. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay*
     *Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

1 ("It also seems to me that any time a State is enjoined by a court from effectuating statutes

2 enacted by representatives of its people, it suffers a form of irreparable injury.").

3       It is indisputable that Congress had the power to make the policy choice it made, as

4 discussed above. Accordingly, the Court should decline to second-guess the policy choice

5 embodied in Congress's legislation by entertaining Plaintiffs' argument that the balance of

6 equities supports enjoining conveyance of title.

7       Lest the Court be left with the impression that such an (inappropriate) exercise

8 would clearly support an injunction, however, a brief review of the benefits to the United

9 States of the exchange is warranted. The benefits of the land exchange mandated by

10 Congress include Resolution's conveyance to the United States of important conservation

11 lands, Peacey Declaration, Exhibit C, ¶¶ 50-60; Resolution's funding of a host of other

12 conservation and cultural protection measures, *id.* at ¶¶ 61-80; the generation of an

13 estimated $61 billion in economic value, Declaration of Sterling Hundley, Exhibit D, ¶

14 28; development of a nationally important domestic source of copper, *id.* at ¶¶ 10-1; and

15 Resolution's surrender of its rights to mine beneath Apache Leap, *id.* at ¶ 19.

16       Additionally, in a departure from current law, the Act requires Resolution Copper

17 to make annual payments to the Federal Government during mine production in the event

18 that the appraisal undervalues the copper resource on the lands Resolution Copper is

19 acquiring. 16 U.S.C. § 539p (e). If the cumulative production of minerals produced in

20 commercial quantities from the Federal land conveyed to Resolution exceeds the quantity

21 of production of locatable minerals from the Federal land used in the income

22 capitalization approach analysis in the appraisal, Resolution is required to pay a value

23 adjustment payment for the excess at the same rate assumed for the income capitalization

24 approach analysis. *Id.* This protects the Government from the risk of an inaccurate

25 appraisal.

26                               **CONCLUSION**

27       For the foregoing reasons, Resolution respectfully requests that this Court deny

28 Plaintiffs' request for a preliminary injunction enjoining the congressionally authorized

1    land exchange.

2         Respectfully submitted this 2nd day of March, 2021.

3                                    **PERKINS COIE LLP**

4
                                   By: *s/ Christopher D. Thomas*
5                                        Christopher D. Thomas
                                       Matthew L Rojas
6                                        Andrea J. Driggs
                                       PERKINS COIE LLP
7                                        2901 North Central Avenue, Suite 2000
                                       Phoenix, Arizona 85012-2788
8
                                   *Attorneys for Defendant-Intervenor*
9                                  *Resolution Copper Mining, LLC*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<strong>CERTIFICATE OF SERVICE</strong>

2

☒    I hereby certify that on March 2, 2021, I electronically transmitted the

3 attached documents to the Clerk's Office using the CM/ECF System for filing and

4 transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

5

6
Roger Flynn
Jeffrey C. Parsons

7
WESTERN MINING ACTION PROJECT
P.O. Box 349; 440 Main Street, #2

8
Lyons, CO 80540
wmap@igc.org

9

10
Susan B. Montgomery
Robyn L. Interpreter

11
MONTGOMERY & INTERPRETER, PLC
3301 E. Thunderbird Rd.

12
Phoenix, AZ 85032

13
smontgomery@milawaz.com
rinterpreter@milaz.com

14

15
Marc D. Fink
CENTER FOR BIOLOGICAL DIVERSITY

16
209 East 7th Street
Duluth, Minnesota 55805

17
mfink@biologicaldiversity.org

18

19
Allison N. Melton
CENTER FOR BIOLOGICAL DIVERSITY

20
P.O. Box 3024
Crested Butte, CO 81224

21
amelton@biologicaldiversity.org

22
*Attorneys for Plaintiffs*

23

24

25

26

27

28

1

2

3

4

Erika Danielle Norman
US DEPARTMENT OF JUSTICE - ENRD
4 Constitution Sq.
Washington, DC 20002
erika.norman@usdoj.gov

5

6

7

Tyler McVeigh Alexander
US DEPARTMENT OF JUSTICE
4 Constitution Sq.
Washington, DC 20002
tyler.alexander@usdoj.gov

8

9

10

11

12

*Attorneys for Defendants*

☒     I hereby certify that on March 2, 2021, I served the attached document by first class mail on Judge Douglas L. Rayes, United States District Court of Arizona, 401 West Washington Street, Suite 626, Phoenix, AZ 85003.

13

14

                                        *s/ Janet Roe*

151133630.1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-